IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| THOMAS J. MURRER, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>　　　　Defendant. | Case No. 3:24-cv-49 |

**WELLS FARGO BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................................1

II. PLAINTIFF'S ALLEGATIONS ...........................................................................................3

III. LEGAL STANDARD..............................................................................................................4

IV. ARGUMENT ............................................................................................................................5

    A. Plaintiff's Fraud in the Inducement Claim Fails As A matter of Law......................5

    B. Plaintiff's Conversion Claim Fails Because The Alleged Funds Were Not Converted By Wells Fargo.........................................................................................8

    C. Plaintiff's Claim of Unjust Enrichment Fails Because The Parties' Relationship Is Governed By An Express, Written Contract ...................................9

    D. Plaintiff's Claim of Violations of the VCPA Fails Because It Does Not Apply To Banks ..........................................................................................................11

    E. Plaintiff's FCRA Claim Fails As A Matter Of Law ...............................................12

V. CONCLUSION......................................................................................................................13

i

# TABLE OF AUTHORITIES

Page

**CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................................5

*Bauer-Robertson v. Shiva Fin., LLC*,
  No. 3:20cv551, 2021 WL 1323403 (E.D. Va. Apr. 8, 2021).....................................................6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................................5

*Big Red Box, LLC v. Square, Inc.*,
  No. 3:18-758, 2020 WL 465928 (D.S.C. January 22, 2020) ....................................................9

*Blevins v. Booker*,
  No. 1:17-CV-00012, 2017 WL 2389720 (W.D. Va. June 1, 2017).......................................7, 8

*Breeden v. Richmond*,
  171 F.R.D. 189 (M.D.N.C. 1997) .............................................................................................6

*Cherdak v. McKirdy*,
  No. 1:17-cv-500, 2017 WL 11501875 (E.D. Va. Aug. 15, 2017) .............................................6

*Eastern Shore Markets, Inc. v. JD Assocs. Ltd. P'ship*,
  213 F.3d 175 (4th Cir. 2000) ....................................................................................................4

*Eisenberg v. Wachovia Bank, NA.*,
  301 F.3d 220 (4th Cir. 2002) ....................................................................................................9

*Farley v. Bank of Am., N.A.*,
  No. 3:14-CV-568, 2015 WL 3651165 (E.D. Va. June 11, 2015) ...........................................11

*Feeley v. Total Realty Mgmt.*,
  660 F. Supp. 2d 700 (E.D. Va. 2009) .....................................................................................12

*Giarratano v. Johnson*,
  521 F.3d 298 (4th Cir. 2008) ....................................................................................................5

*Hishon v. King & Spalding*,
  467 U.S. 69 (1984).....................................................................................................................4

*Holmes v. Cap. One, N.A.*,
  No. 3:22-CV-0823, 2023 WL 6318883 (N.D.N.Y. Sept. 28, 2023)........................................11

*James G. Davis Constr. Corp. v. FTJ, Inc.*,
   841 S.E.2d 642 (Va. 2020)..................................................................................................10

*Julian v. Rigney*,
   No. 4:13-cv-00054, 2014 WL 1207980 (W.D. Va. Mar. 24, 2014) .........................................6

*Julian v. U.S. Dept. of Agric.*,
   585 F. App'x 850 (4th Cir. 2014) ...........................................................................................6

*LCF Group, Inc. v. Piedmont Power Sports, Inc.*,
   No. 3:22cv0057, 2023 WL 5352001 (W.D. Va. Aug. 21, 2023)............................................10

*McPike v. Zero-Gravity Holdings, Inc.*,
   280 F. Supp. 3d 800 (E.D. Va. 2017) ...................................................................................10

*MSP Recovery Claims, Series LLC v. Lundbeck LLC*,
   664 F. Supp. 3d 635 (E.D. Va. 2023) ...................................................................................10

*Nahigian v. Juno Loudoun, LLC*,
   684 F. Supp. 2d 731 (E.D. Va. 2010) ...................................................................................11

*Norman v. Wells Fargo Bank, N.A.*,
   No. 3:17-CV-585, 2018 WL 1037048 (E.D. Va. Feb. 23, 2018) ............................................11

*Out of Chaos, Ltd. v. AON Corp.*,
   15 F. App'x 137 (4th Cir. 2001) .............................................................................................7

*Riley v. Barringer*,
   337 F. Supp. 3d 647 (W.D. Va. 2018) ...................................................................................11

*Saunders v. Branch Banking and Trust Co. of Va.*,
   526 F.3d 142 (4th Cir. 2008) ................................................................................................13

*Schmidt v. Wells Fargo Home Mtg.*,
   No. 3:11-cv-059, 2011 WL 1597658 (E.D. Va. Apr. 26, 2011) ............................................12

*Schroeder v. Capital One Fin. Corp.*,
   665 F. Supp 2d 219 (E.D.N.Y. 2009) ...................................................................................11

*Shawmut Worcester Cty. Bank v. First Am. Bank & Trust*,
   731 F. Supp. 57 (D. Mass. 1990) ...........................................................................................9

*Sheffer v. Healthcare Servs. Grp., Inc.*,
   No. 7:19CV00053, 2019 WL 5295531 (W.D. Va. Oct. 18, 2019)...........................................6

*Solutions v. First State Bank of Brownsboro*,
   No. 6:19-cv-329, 2020 WL 12991132 (E.D. Tex. April 16, 2020) .........................................9

*Song Chuan Tech. (Fujian) Co. v. Bank of Am.*,
   No. 2:16-3269, 2017 WL 980248 (D.S.C. Mar. 10, 2017) ......................................................9

*Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co.*,
   191 F. Supp. 2d. 652 (E.D. Va. 2002) ................................................................................6

*United Leasing Corp. v. Thrift Ins. Corp.*,
   440 S.E.2d 902 (Va. 1994) ............................................................................................2, 8

*Zeal Global Servs. Private Ltd. v. Suntrust Bank*,
   508 F. Supp. 3d 1303 (N.D. Ga. 2020) ................................................................................9

**RULES**

Fed. R. Civ. P. 9(b) ...................................................................................................1, 6

Fed. R. Civ. P. 12(b)(6) ...................................................................................................1

**STATUTES**

15 C.F.R. § 1022.41(c) .................................................................................................12

15 U.S.C. § 1681s-2 ..................................................................................................3, 12

15 U.S.C. § 1681s-2(a) ...................................................................................................13

15 U.S.C. § 1681s-2(b) ...................................................................................................13

15 U.S.C. § 1681s-2(c) ...................................................................................................13

15 U.S.C. § 1681t ......................................................................................................3, 12

Va. Code. Ann. § 59.1-199 ..........................................................................................2, 11

Va. Code. Ann. § 59.1-200(A) .....................................................................................2, 11

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") hereby submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff Thomas J. Murrer's ("Plaintiff") Amended Class Action Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Motion").

## I.     INTRODUCTION

Plaintiff asserts claims against Wells Fargo which arise from an alleged fraudster's access to, and subsequent transactions involving, Plaintiff's deposit and credit card accounts with Wells Fargo. Specifically, Plaintiff alleges that after conversing with a fraudster impersonating a Wells Fargo representative over the phone, Plaintiff's deposit and credit card accounts incurred fraudulent transactions. Based on these allegations, Plaintiff contends that Wells Fargo's failure to implement and follow commercially reasonable security procedures allowed his personal checking account and credit card to be accessed by the fraudster.

Plaintiff's claims suffer from a myriad of legal deficiencies, and each should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). First, Plaintiff's fraud in the inducement claim fails as a matter of law. Despite broad allegations that Wells Fargo "harbored the intent not to perform the Agreements" at the time of contracting, Plaintiff fails to plead any factual allegations sufficient to prove that a false representation was made—let alone do so with the particularity required under Fed. R. Civ. P. 9(b). *See* Am. Compl. ¶ 63. Rather, Plaintiff broadly asserts that Wells Fargo "publicizes information and drafts its Agreements to contain knowingly false representations of material facts, with the intent to mislead its customers." *Id.* Plaintiff's allegations in support of this claim are no more than a regurgitation of the general elements, and a claim for fraud in the inducement must be dismissed when the allegations are merely conclusory and do not support the assertion that a defendant did not intend to fulfill its obligations at the time

1

they entered into the agreement. Therefore, Plaintiff's fraud in the inducement claim fails as a matter of law.

Second, Plaintiff's conversion claim fails because the alleged funds were not converted by Wells Fargo. Under Virginia law, the tort of conversion constitutes "any wrongful exercise or assumption of authority … over another's goods, depriving him of their possession; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." *United Leasing Corp. v. Thrift Ins. Corp.*, 440 S.E.2d 902, 905 (Va. 1994). Here, the fraudulently obtained funds were converted by the fraudster, not by Wells Fargo, and therefore, the fraudster, not Wells Fargo, is liable for the conversion. Consequently, this claim should be dismissed.

Third, Plaintiff's unjust enrichment claim fails as a matter of law because there can be no claim based on an implied contract theory when an express contract governs the parties' relationship. Plaintiff's entire theory of liability is based on Wells Fargo's alleged representations in its account agreements that govern Plaintiff's accounts. Therefore, Plaintiff's claim centers on the existence of a contract, and he cannot maintain an unjust enrichment claim as a matter of law. While the claim for unjust enrichment should be dismissed for this reason alone, Plaintiff also fails to plead the elements of an unjust enrichment claim. Plaintiff cannot show that he is entitled to restitution from Wells Fargo as the money from the fraudulent transactions was transferred to a third-party fraudster, not Wells Fargo. It was the scammer, therefore, who was unjustly enriched by Plaintiff's transaction, not Wells Fargo. Thus, Plaintiff's unjust enrichment claim fails as a matter of law.

Fourth, Plaintiff's claim for violations of the Virginia Consumer Protection Act ("VCPA") fail because the VCPA does not apply to banks, like Wells Fargo. *See* Va. Code. Ann. §§ 59.1-

2

200(A), 59.1-199 ("Nothing in this chapter shall apply to: banks, savings institutions, credit unions . . . "). Accordingly, this claim should be dismissed.

Lastly, Plaintiff's claim for violations of the Fair Credit Reporting Act ("FCRA") fails because as an initial matter, Plaintiff alleges that Wells Fargo "repeatedly fail[ed] to comply with its obligations as a financial institution pursuant to 15 U.S.C. § 1681t" (Am. Compl. ¶ 81); however, section 1681t does not set forth obligations for financial institutions and instead outlines preemption of certain categories of state laws. This provision is inapplicable. To the extent Plaintiff meant to cite 15 U.S.C. § 1681s-2, which governs responsibilities of furnishers of information to credit reporting agencies ("CRAs"), Plaintiff fails to allege anywhere in the Amended Complaint that Wells Fargo is a furnisher, and even assuming *arguendo* that Wells Fargo is a furnisher, the FCRA does not provide a consumer with a private right of action to enforce the accurate reporting requirement against furnishers. Consequently, this claim should be subject to dismissal.[1]

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges he was a victim of financial fraud involving his Wells Fargo checking account and VISA credit card. *See generally* Am. Compl. Specifically, Plaintiff alleges that on November 7, 2022, a third-party fraudster called his phone impersonating a Wells Fargo employee. Am. Compl. ¶¶ 39-40. After conversing with the fraudster over the phone, Plaintiff contends that the fraudster was able to take control of his accounts and (i) change the username and password; (ii) enroll in online wire services and add new beneficiaries; (iii) activate a debit card tied to

---

[1] This Motion is filed in the alternative to Wells Fargo's Motion to Compel Arbitration in the event that the Court does not compel Plaintiff's claims to arbitration. This Motion is submitted without prejudice to, and without waiver of, any of the arguments made in Wells Fargo's Motion to Compel Arbitration.

3

Plaintiff's checking account; (iv) change statement delivery preferences in Plaintiff's account ending in 9340; (v) make fraudulent transfers and/or wires in the amounts of $9,000, $1,500, and $1,600 from Plaintiff's accounts; (vi) make cash advances from Plaintiff's credit card into his deposit account ending 9743, which were in turn wired out to the fraudster's account in the amounts of $9,109.67 and $14,323.30; and (vii) fraudulently withdraw and charged $11,188.65 to Plaintiff's Visa ending in 8650.  *Id.* at ¶ 28.  After notifying Wells Fargo of the alleged fraudulent transactions, Plaintiff opened new Wells Fargo deposit and credit card accounts.  *Id.* at ¶ 42.  Wells Fargo has refused to refund the alleged fraudulent transactions at issue and has not credited Plaintiff's credit cards for the fraudulent cash advances at issue in the Complaint.  *Id.* at ¶ 47.

Based on these allegations, Plaintiff asserts claims against Wells Fargo for (1) fraud in the inducement; (2) conversion; (3) unjust enrichment; (4) violations of the VCPA; and (5) violations of FCRA.  *See generally id.*  Plaintiff purports to assert these claims on behalf of a nationwide class compromised of: "all persons who maintained a Wells Fargo deposit account or credit card account at any time from January 2020 through the present [] with the exact date to be determined through discovery," and a Virginia subclass compromised of "all persons in Virginia who maintained a Wells Fargo account at any time from January 2020 through the present [] with the exact date to be determined through discovery."  *Id.* at ¶ 52.

### III.  <u>LEGAL STANDARD</u>

A district court should grant a motion to dismiss "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  While the Court must take all factual allegations made in a complaint as true, *see Eastern Shore Markets, Inc. v. JD Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000), the U.S. Supreme Court heightened a plaintiff's pleading requirements in

4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In order to survive a motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* at 555. Indeed, the Fourth Circuit has concluded that the Supreme Court's decision in *Twombly* establishes a regime that is "more favorable to dismissal of a complaint" at the earliest stages of a case. *See Giarratano v. Johnson*, 521 F.3d 298, 304 n.3 (4th Cir. 2008).

Specifically, a plaintiff's claim must be dismissed if he fails to allege "enough facts to state a claim to relief that is plausible on its face" such that he has "nudged [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In *Iqbal*, the Court established a two-step approach for determining whether a complaint may survive dismissal. First, a district court need not accept legal conclusions as true, as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). Second, only a complaint that states a plausible claim for relief should survive a motion to dismiss, and making such a determination is a "context specific" task where the court must apply its judicial experience and common sense. *Id.* at 663-64. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of the truth." *Id.* at 679.

## IV. ARGUMENT

### A. Plaintiff's Fraud in the Inducement Claim Fails As A Matter of Law.

To prevail on a claim for fraudulent inducement under Virginia law, a plaintiff must show the defendant made "(1) a false representation, (2) of material fact, (3) made intentionally and

5

knowingly, (4) with intent to mislead, (5) [that was relied upon] by the party misled, and (6) [incurred] resulting damage to the party misled." *Sheffer v. Healthcare Servs. Grp., Inc.*, No. 7:19CV00053, 2019 WL 5295531, at *2-3 (W.D. Va. Oct. 18, 2019) (granting motion to dismiss for failure to assert a plausible claim for fraud as "[s]uch conclusory allegations of wrongdoing are precisely the type of allegations that *Twombly* and *Iqbal* rejected"); *Julian v. Rigney*, No. 4:13-cv-00054, 2014 WL 1207980, at *23 (W.D. Va. Mar. 24, 2014) (granting motion to dismiss for failure to allege any false representation, "and arguably fail[ure] to plead even a single element of a claim for fraudulent inducement."), *aff'd sub nom.*, *Julian v. U.S. Dept. of Agric.*, 585 F. App'x 850 (4th Cir. 2014).

Plaintiff must also meet the requirements of Federal Rule of Civil Procedure 9(b) to sufficiently plead fraud. *Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co.*, 191 F. Supp. 2d. 652, 662 (E.D. Va. 2002) (noting that Rule (9b) dictates that 'the circumstances of fraud . . . shall be stated with particularity,' which includes the 'time, place, and contents of the alleged fraudulent misrepresentation, as well as the identity of each person making the misrepresentation and what was obtained thereby.'") (quoting Fed. R. Civ. P. 9(b) and *Breeden v. Richmond*, 171 F.R.D. 189, 195 (M.D.N.C. 1997).); *Cherdak v. McKirdy*, No. 1:17-cv-500, 2017 WL 11501875, at *3 (E.D. Va. Aug. 15, 2017); *see also Sheffer*, 2019 WL 5295531, at *2 (granting motion to dismiss fraudulent inducement claim for failure to comply with Rule 9(b) pleading standard).

There is also a well-accepted principle that "a showing of fraudulent inducement requires evidence of fraud either before or at the time of contracting," and must stand "apart from the mere breach of a contractual obligation." *Bauer-Robertson v. Shiva Fin., LLC*, No. 3:20cv551, 2021 WL 1323403, at *8 (E.D. Va. Apr. 8, 2021). "A claim for fraud in the inducement requires more than a mere allegation that the defendant failed to fulfill his promises under the contract; otherwise,

every breach of contract could be made the basis of an action in tort for fraud." *Blevins v. Booker*, No. 1:17-CV-00012, 2017 WL 2389720, at *7 (W.D. Va. June 1, 2017) (internal quotations and citation omitted); *see also Out of Chaos, Ltd. v. AON Corp.*, 15 F. App'x 137, 142 (4th Cir. 2001) (noting that where "the allegations of fraud [] are nothing more than allegation[s] of negligent performance of contractual duties, such alleged breaches of duty are not actionable in tort") (internal quotations and citation omitted). Instead, "the plaintiff must allege facts demonstrating that the defendant, at the time the contract was entered into, never intended to abide by its terms." *Blevins*, 2017 WL 2389720 at *7.

Despite broad allegations that Wells Fargo "harbored the intent not to perform the Agreements" at the time of contracting, Plaintiff fails to plead any facts sufficient to prove that a false representation was made—let alone do so with the particularity required under Rule 9(b). *See* Am. Compl. ¶ 63. Rather, Plaintiff broadly asserts that Wells Fargo "harbored the intent not to perform the Agreements." *Id.* This allegation is entirely boilerplate and conclusory. Plaintiff alleges in the Amended Complaint that he opened and held various deposit account and credit card accounts, listing specific account opening dates as of October 1, 2014 and March 25, 2021. *See* Am. Compl. ¶¶ 17, 24. Plaintiff does not explain the basis for Wells Fargo's alleged intent to not abide by the terms of the relevant account agreements on each of those dates, let alone any other dates on which relevant accounts were opened. *Id.* Rather, Plaintiff relies upon irrelevant citations to 2016 testimony having nothing to do with the issues in this case and media statements made in 2020 as support of supposed intent to not comply with its agreements. *Id.* at ¶¶ 19, 25.

Even further, Plaintiff cites to truncated sentences taken out of context in Wells Fargo's Deposit Account Agreement and Wells Fargo's Card Agreement as a supposed basis for why he should not be liable for the transactions at issue in the Amended Complaint, but he conveniently

7

fails to plead, among other things: (1) the nature of each transaction, and what law applies to it (for example, Regulation E or Article 4 of the UCC); and (2) the sections of the agreements that he asserts should control. Am. Compl. ¶¶ 3, 17. Plaintiff's vague and conclusory assertion that not only should his transactions have been covered in some way, but that Wells Fargo intended at the time he entered into the agreements to not abide by those unknown terms, is woefully short of the pleading requirement under Rule 9(b). As noted, a claim for fraud in the inducement must be dismissed when the allegations are "merely conclusory" and do not support the assertion that a defendant did not intend to fulfill its obligations at the time they entered into the agreement. *See, e.g.*, *Blevins*, 2017 WL 2389720 at *7 (holding plaintiff failed to "allege facts that demonstrate[d] the defendant's intent . . . never to abide by the terms of the contract" and therefore "these are merely conclusory allegations and are insufficient to state a claim for fraud in the inducement."). Plaintiff proffers nothing more than a "mere allegation that [Wells Fargo] failed to fulfill [its] promises under the contract," which is insufficient to state a claim for fraud in the inducement. *Id*.

Accordingly, Plaintiff has failed to meet the pleading requirements for a claim of fraud in the inducement under Virginia law, and as such, this claim should be dismissed.

      **B.**    **Plaintiff's Conversion Claim Fails Because The Alleged Funds Were Not Converted By Wells Fargo.**

Under Virginia law, the tort of conversion constitutes "any wrongful exercise or assumption of authority ... over another's goods, depriving him of their possession; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." *United Leasing Corp.*, 440 S.E.2d at 905.

Here, Plaintiff acknowledges the fraudulently obtained funds were converted by the fraudster, not by Wells Fargo, and he does not allege that Wells Fargo received the money from the alleged fraudulent transfers - instead, the fraudsters did. Wells Fargo never "exerted" any

dominion over Plaintiff's money or otherwise had control over the money. If there is any claim for conversion, it is against the fraudster, not Wells Fargo. *See, e.g.*, *Song Chuan Tech. (Fujian) Co. v. Bank of Am.*, No. 2:16-3269, 2017 WL 980248, at *2 (D.S.C. Mar. 10, 2017) ("In other words, fraudulently obtained funds are converted by the fraudster, not his bank.") (citing *Eisenberg v. Wachovia Bank, NA.*, 301 F.3d 220, 225 (4th Cir. 2002)); *Shawmut Worcester Cty. Bank v. First Am. Bank & Trust*, 731 F. Supp. 57, 60 (D. Mass. 1990) (dismissing conversion claim against bank that processed electronic funds transfer request according to account number provided, even though one owner of account was not the intended beneficiary); *Zeal Global Servs. Private Ltd. v. Suntrust Bank*, 508 F. Supp. 3d 1303, 1315 (N.D. Ga. 2020) ("[Plaintiff] cannot state a claim for conversion because it cannot establish that the Banks had title to the property ([Plaintiff's] funds) or actual possession of their funds, since 'as a matter of law' the title passed to the fraudsters when the payment order was accepted" not defendant); *Big Red Box, LLC v. Square, Inc.*, No. 3:18-758, 2020 WL 465928, at *9 (D.S.C. January 22, 2020) (dismissing conversion claim where fraudulently obtained funds were converted by the fraudster, not the defendant); *Solutions v. First State Bank of Brownsboro*, No. 6:19-cv-329, 2020 WL 12991132, at *8 (E.D. Tex. April 16, 2020) (dismissing conversion claim because Plaintiff did not allege defendant "wrongfully exercised dominion or control over the funds" where "the Bank processed the funds transfer according to the account number provided by [Plaintiff], which was the account held by the third party who defrauded META"). Consequently, this claim should be dismissed.

### C. Plaintiff's Claim of Unjust Enrichment Fails Because The Parties' Relationship Is Governed By An Express, Written Contract.

Plaintiff fails to state a claim for unjust enrichment because this equitable remedy is inapplicable when an express contract governs the parties' relationship. "Unjust enrichment is an implied contract action based upon the principle that one may not enrich himself unjustly at the

9

expense of another." *LCF Group, Inc. v. Piedmont Power Sports, Inc.*, No. 3:22cv0057, 2023 WL 5352001, at *5 (W.D. Va. Aug. 21, 2023) (internal quotations and citation omitted). To plead a claim for unjust enrichment under Virginia law, a plaintiff must show "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit and should reasonably have expected to repay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value." *James G. Davis Constr. Corp. v. FTJ, Inc.*, 841 S.E.2d 642, 650 (Va. 2020). Moreover, it is well established that if there is a contract between the parties, the contract governs the claim and recovery for unjust enrichment is improper. *MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 664 F. Supp. 3d 635, 660 (E.D. Va. 2023).

Accordingly, Plaintiff must show that the parties did not have a contract, Plaintiff conferred a benefit on Wells Fargo, Wells Fargo voluntarily accepted and retained that benefit, and the circumstances are such that the retention of that benefit without paying the value thereof would be inequitable. *See, e.g.*, *McPike v. Zero-Gravity Holdings, Inc.*, 280 F. Supp. 3d 800, 809 n.12 (E.D. Va. 2017). However, Plaintiff was a Wells Fargo customer subject to a deposit account agreement and a credit card customer agreement. *See id.* at 809 (granting motion to dismiss unjust enrichment claim because a valid agreement governed the parties' relationship). Plaintiff admits the applicability of these contracts to both his deposit accounts and credit card accounts, attaching them as Exhibits A and B to the original complaint in this action and cite to them in the Amended Complaint. *See,* Am. Compl. ¶¶ 2-4, 17. Because the parties' relationship is controlled by express contracts, Plaintiff cannot assert claims for equitable relief.

Beyond the existence of an express contract, Wells Fargo was not unjustly enriched by the alleged transactions, because it did not receive or retain a benefit. Plaintiff's Amended Complaint makes clear that Wells Fargo did not receive the money from the alleged fraudulent transfers, the

10

fraudsters did, and therefore any benefit that Plaintiff conferred was to the alleged fraudsters, not to Wells Fargo. *See,* Am. Compl. ¶ 28. *See also Riley v. Barringer*, 337 F. Supp. 3d 647, 655 (W.D. Va. 2018) (dismissing unjust enrichment counterclaim, because the counterclaimant failed to "state facts suggesting that [he] conferred any services or benefits on [the counterdefendant]"); *Schroeder v. Capital One Fin. Corp.*, 665 F. Supp 2d 219, 226-27 (E.D.N.Y. 2009) (dismissing claims for unjust enrichment where "the only party that benefitted from the alleged wrongful transfer of funds was the unauthorized third party to whom the funds were transferred" and therefore "no benefit to the Bank stemming from the allegedly wrongful transfer of funds" occurred); *Holmes v. Cap. One, N.A.*, No. 3:22-CV-0823, 2023 WL 6318883, at *13 (N.D.N.Y. Sept. 28, 2023) ("Finally, Defendant received no monetary gain from the fraudulent merchant stealing [money] from Plaintiff. This unfortunate incident did not enrich Defendant at all, let alone unjustly."). As a result, this claim should be dismissed.

      **D.    Plaintiff's Claim of Violations of the VCPA Fails Because It Does Not Apply To Banks.**

The VCPA makes it unlawful for a supplier to make certain misrepresentations "in connection with a consumer transaction." Va. Code §§ 59.1-200(A). To state a claim under the VCPA, Plaintiff must allege "(1) fraud, (2) by a supplier, (3) in a consumer transaction." *Nahigian v. Juno Loudoun, LLC*, 684 F. Supp. 2d 731, 741 (E.D. Va. 2010).

However, the VCPA does not apply to banks, like Wells Fargo. *See* Va. Code. Ann. §§ 59.1-200(A), 59.1-199 ("Nothing in this chapter shall apply to: banks, savings institutions, credit unions . . ."); *see also, e.g.*, *Norman v. Wells Fargo Bank, N.A.*, No. 3:17-CV-585, 2018 WL 1037048, at *5 (E.D. Va. Feb. 23, 2018) (dismissing VCPA claim with prejudice because "institutions such as Defendant are specifically excluded from liability under the VCPA."); *Farley v. Bank of Am., N.A.*, No. 3:14-CV-568, 2015 WL 3651165, at *6 (E.D. Va. June 11, 2015)

11

("Moreover, the VCPA explicitly states that it does not apply to banks"); *Feeley v. Total Realty Mgmt.*, 660 F. Supp. 2d 700, 714-15 (E.D. Va. 2009) ("Plaintiffs have failed to assert claims under the VCPA, and such claims would be untenable against the banks in this litigation. . . . [A]ny plaintiffs who reside in Virginia cannot bring a claim against the banks under the VCPA because the statute precludes such claims against banks."); *Schmidt v. Wells Fargo Home Mtg.*, No. 3:11-cv-059, 2011 WL 1597658, at *4 (E.D. Va. Apr. 26, 2011) (holding the VCPA expressly excludes banks).

Accordingly, this claim should be dismissed.

### E.     Plaintiff's FCRA Claim Fails As A Matter Of Law.

As an initial matter, Plaintiff alleges that Wells Fargo "repeatedly failed to comply with its obligations as a financial institution pursuant to 15 U.S.C. § 1681t" (Am. Compl. ¶ 81); however, section 1681t does not set forth obligations for financial institutions and instead outlines preemption of certain categories of state laws. This provision is inapplicable and Wells Fargo cannot glean what violation Plaintiff could assert under this section.

Plaintiff also alleges Wells Fargo knowingly and willfully reported inaccurate information to the credit bureaus in violation of 15 U.S.C. § 1681, yet fails to allege facts establishing a basis for this allegation. Nor does Plaintiff cite to any specific provision within the statute. Plaintiff alleges that Well Fargo is "filing false information regarding Plaintiff's account with each of the credit bureaus, damaging his credit rating, and preventing him from getting other lines of credit." Am. Compl. ¶ 48. To the extent Plaintiff meant to cite 15 U.S.C. § 1681s-2, which governs responsibilities of furnishers of information to credit reporting agencies ("CRAs"), Plaintiff cannot state such a claim under the FCRA, as set forth below.

A furnisher is "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 15 C.F.R. § 1022.41(c). Even

assuming *arguendo* that Wells Fargo is a furnisher, the FCRA does not provide a consumer with a private right of action to enforce the accurate reporting requirement. Instead, a consumer may sue a furnisher only for the furnisher's actions taken after it receives notice of the dispute from a CRA. *See* 15 U.S.C. § 1681s-2(c) (precluding private actions to enforce claims for inaccurate reporting under § 1681s-2(a)); *Saunders v. Branch Banking and Trust Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008) ("FCRA explicitly bars private suits for violations of § 1681s-2(a), but consumers can still bring private suits for violations of § 1681s-2(b)."). Notably, Plaintiff does not allege that he disputed the alleged inaccurate reporting to a CRA nor does he allege that a CRA notified Wells Fargo of any alleged dispute or that Wells Fargo failed to investigate the dispute, as is required by § 1681s-2(b). Consequently, this claim is subject to dismissal.

## V.   CONCLUSION

For these reasons, Wells Fargo requests that the Court grant its Motion to Dismiss, dismiss the action with prejudice, and grant such other relief as it deems just and proper.

Dated:  March 25, 2024                Respectfully submitted,

*/s/ Katherine E. Lehnen*
Katherine E. Lehnen (VSB No. 92357)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA
Telephone: (804) 775 1000
Facsimile: (804) 775 1061

Jarrod D. Shaw (admitted *pro hac vice*)
K. Issac deVyver (admitted *pro hac vice*)
Karla L. Johnson (admitted *pro hac vice*)
MCGUIREWOODS LLP
Tower Two-Sixty
260 Forbes Avenue, Suite 1800

13

        Pittsburgh, PA 15222
        Telephone: (412) 667-6057
        Email: jshaw@mcguirewoods.com
        Email: kdevyver@mcguirewoods.com
        Email: kjohnson@mcguirewoods.com

*Attorneys for Defendant*
*Wells Fargo Bank, NA*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on March 25, 2024 I caused the foregoing document to be filed with the Clerk of the Court and served upon on all counsel of record via the Court's CM/ECF system.

*/s/ Katherine E. Lehnen*
Katherine E. Lehnen (VSB No. 92357)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA
Telephone: (804) 775 1000
Facsimile: (804) 775 1061
Email: klehnen@mcguirewoods.com

*Attorney for Defendant*
*Wells Fargo Bank, N.A.*